# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON REAM,

                Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES/POLK CENTER,

                Defendant.

Civil Action No. 1:16-cv-173 (BJR)

MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

## I. INTRODUCTION

Currently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 37). Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court will GRANT Defendant's Motion. The Court's reasoning follows.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Shannon Ream worked as a Residential Service Aide for Defendant Polk Center from July 2003 through February 2010. (Doc. No. 38 ¶ 1.] Polk Center is a mental health facility located in Polk, Pennsylvania and operated by the Commonwealth of Pennsylvania Department of Human Services. (*Id.* ¶ 2.) In 2010 and 2011, Plaintiff filed discrimination and civil rights claims against the Department of Public Welfare of the Commonwealth of Pennsylvania; Shirley Pickens, the Director at Polk Center since June 2008; and Kathy Garin. (*Id.* ¶¶ 5, 38.) These actions were resolved via a settlement memorialized on February 27, 2012. (*Id.* ¶¶ 6-7.) The terms of the Settlement Agreement and Release of All Claims provided:

> It is further agreed that upon receipt of any request from a non-Commonwealth employer for prior employment information pertaining to Shannon Ream, the Department of Public Welfare and/or Polk Center will furnish, as per standard

1

procedure, Shannon Ream's length of service and position prior to separation. Requests for prior employment information from Commonwealth employers will be processed in accordance with standard policy and procedure.

(*Id.* ¶ 10.)

In 2012 Plaintiff applied for a Corrections Officer Trainee position with the Pennsylvania Department of Corrections at the State Correctional Institutions at Albion, Forest, Mercer, Cambridge Springs, and Venango County. (*Id.* ¶ 11.) In her application, Plaintiff listed Polk Center as a previous employer. (*Id.* ¶ 12.) Plaintiff received a letter dated October 23, 2012 from the State Correctional Institution at Mercer ("SCI-Mercer") extending a conditional offer of employment as a Corrections Officer Trainee. (*Id.* ¶ 13.) The offer letter provided that an appointment date could not be established until Plaintiff successfully passed a required medical examination and TB test, received a satisfactory background check, and met other requirements. (*Id.* ¶ 14.) "Additionally," the letter stated, Plaintiff's "actual appointment as a Corrections Officer Trainee is contingent upon the availability of Corrections Officer Trainee positions, Central office approval to hire, and our ability to appoint you within the Civil Service rules." (*Id.*)

In his role as Field Human Resources Officer at SCI-Mercer in 2012-2013, John Biondo was familiar with Plaintiff's application for employment. (*Id.* ¶ 21.) At no point during the consideration of Plaintiff's application was a call placed to Polk Center to obtain prior employment information; Biondo never spoke to anyone at Polk Center about Plaintiff; and Plaintiff has no knowledge of Shirley Pickens ever speaking to anyone at SCI-Mercer in 2012. (*Id.* ¶¶ 25-27.) Pickens testified that from the time Plaintiff's prior litigation was settled in February 2012 until the present, she did not have any contact with anyone from the Department of Corrections regarding Plaintiff. (*Id.* ¶ 38.)

2

A pre-printed form was sent by Biondo's office, under his signature, to the personal references and previous employers listed on Plaintiff's employment application, which included Polk Center, in order to obtain information about previous employment. (*Id.* ¶ 24.) Robert Withey, Director of Human Resources at Polk Center, completed this form for Plaintiff, and it was received by Biondo's office on November 1, 2012. (*Id.* ¶¶ 28-29.) Other than Withey's response sent to Biondo, Plaintiff has no knowledge or information as to any other contact or communication from Polk Center to SCI-Mercer in 2012. (*Id.* ¶ 30.) The first page of the returned form from Polk Center gave Plaintiff's dates of employment, the classification that she worked under, and in the "Comments" section the notation "Decline to comment." (*Id.* ¶ 31.) Biondo testified that he did not interpret the notation "Decline to comment" as being a bad or negative reference from Polk Center, and that the notation was inconsequential in his consideration of Plaintiff's application. (*Id.* ¶¶ 33-34.)

On December 7, 2012, the Department of Corrections implemented a hiring freeze that covered all positions in all appropriations. (*Id.* ¶ 44.) That same day, a letter was sent to Plaintiff from the Department of Corrections Superintendent notifying her that, "effective immediately, SCI-Mercer is hereby rescinding the offer of conditional employment . . . as the conditions of the offer were not able to be satisfied." (Doc. No. 39-4.) Plaintiff received another letter, also dated December 7, 2012, from Theresa J. Coll, Field Human Resources Officer at SCI-Albion, which indicated that "Department of Corrections imposed a hiring freeze effective December 7, 2012 due to budgetary reasons." (Doc. No. 38 ¶ 45.) Plaintiff was never offered a Corrections Officer Trainee position after December 7, 2012. (*Id.* ¶ 46.)

On July 18, 2014, after Plaintiff completed an eleven month program at Venango Technical, she became a Licensed Practical Nurse ("LPN"). (*Id.* ¶ 47.) In November 2018,

3

Plaintiff applied for an LPN position at Turning Point, a drug and alcohol treatment facility. (*Id.* ¶ 48.) As the Director of Nursing at Turning Point in 2014 when Plaintiff applied for the position, Erin Darby was involved in the process of hiring employees. (*Id.* ¶ 49.) Plaintiff interviewed with Darby at the end of November 2014. (*Id.* ¶ 50.) After Plaintiff's interview, Darby contacted Polk Center and spoke by phone with a woman named Shirley concerning Plaintiff's employment. (*Id.* ¶ 51.) Darby remembers that the comments about Plaintiff were negative, and she felt the recommendation she received was not to hire Plaintiff. (*Id.* ¶ 53.)

Following this phone conversation, Darby contacted Plaintiff and informed her that Turning Point would not be hiring her because of a negative reference. (Doc. No. 43 ¶ 63.) Plaintiff then pleaded her case to get the job, which prompted Darby to tell her supervisor, "I feel like we need to hire [Plaintiff]. I feel like we need to give her a chance." (*Id.* ¶¶ 64-65.) Darby's supervisor stated that the decision was Darby's, and Darby decided to hire Plaintiff. (*Id.* ¶ 65.) Plaintiff started working at Turning Point on December 2, 2014, where she remains gainfully employed. (Doc. No. 38 ¶ 55.)

Plaintiff filed this action in federal court on July 6, 2016, alleging post-employment retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq*. Defendant's motion for summary judgment (Doc. No. 37) is now ripe.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether to grant summary judgment, a trial court must resolve all doubts against the moving party and examine the record in a light most favorable

4

to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654 (1962). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on "unsupported assertions, conclusory allegations, or mere suspicions." *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)); *Williams v. Borough of West Chester*, 801 F. 2d 458, 460 (3d Cir. 1989).

## IV. DISCUSSION

The anti-retaliation provisions of Title VII provide former employees with a legal recourse against post-employment retaliation. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) ("It being more consistent with the broader context of Title VII and the primary purpose of § 704(a), we hold that former employees are included within § 704(a)'s coverage."). Under the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must first establish a *prima facie* case of retaliation. In order to establish a *prima facie* case of post-employment retaliation, a plaintiff must establish three elements: (1) the plaintiff engaged in protected activity; (2) the employer took an adverse employment action against the employee; and (3) there was a causal connection between plaintiff's participation in the protected activity and the adverse employment action. *See Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995). While the parties agree that the discrimination actions brought by Plaintiff in 2010 and 2011 constitute protected activity, they dispute whether the second and third elements are satisfied.

Adverse action under the retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment," but rather encompass all actions which a reasonable employee would have found to be materially adverse. *See Burlington Northern and*

*Santa Fe Railway Co. v. White,* 548 U.S. 53, 64–70 (2006). Plaintiff alleges two instances of adverse action: First, when Defendant returned a reference form for Plaintiff to SCI Mercer with the statement "Decline to comment" in the section reserved for comments, and second, when Defendant allegedly provided a negative job reference for Plaintiff to Turning Point.

Plaintiff has not established that Defendant's statement "Decline to comment" in a reference form Plaintiff constitutes an adverse employment action. The 2012 Settlement between Plaintiff and Defendant required Defendant to respond to a prospective employer's request for information pertaining to Plaintiff by "furnish[ing], as per standard procedure, Shannon Ream's length of service and position prior to separation." (Doc. No. 38 ¶ 10.) The reference form provided to SCI Mercer does precisely that by stating that Plaintiff worked full-time as a Residential Services Aide from 2003 to 2010. (Doc. No. 39-2 at 22.) Defendant was under no obligation to provide further comment, and prudently chose not to given Defendant's antagonistic history with Plaintiff. In the absence of anything positive Defendant wished to convey, declining to comment was an effective way for Defendant to complete the reference form honestly without committing a post-employment adverse action. Moreover, there is no evidence that SCI Mercer perceived Defendant's declination to comment as negative, that SCI Mercer had any other communication with Defendant about Plaintiff, or that SCI Mercer rescinded the conditional offer of employment made to Plaintiff because of Defendant's employment reference.

Regarding the second alleged instance, Plaintiff has established that Defendant provided a negative employment reference to Turning Point by answering the question "Would you rehire this employee" with "No." The Court does not credit Defendant's implausible suggestion that Turning Point's interpretation of that response "as a negative reference is more a matter of miscommunication than a statement by Polk Center on Plaintiff's abilities." (Doc. No. 37 at 22.)

6

Assuming that a negative reference constitutes adverse employment action, however, Plaintiff is unable to show damages resulting from the negative reference. "The burden is on the plaintiff to establish proximate cause between breach and damage and if the loss caused by a breach cannot be isolated from that attributable to other factors, no damages may be awarded." *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 527 (3d Cir. 1978). Plaintiff was able to secure employment with Turning Point, where she remained gainfully employed at the time this action was filed, irrespective of Defendant's allegedly negative reference. Absent any cognizable damages, her claim must fail.

## V. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Summary Judgment. This case is DISMISSED.

Dated this 21st day of November, 2017.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge